YOUNGBLUTH, Appellant, vs. STEPHENS, Respondent.

*September 29 — October 20, 1899.*

*Master and servant: Personal injury: Contributory negligence.*

Plaintiff, a boy about seventeen years old, had worked for two seasons in defendant's brick yard, and during that time, for a day or two at least, had operated the cars on a small railroad used to haul clay out of the clay pit, which were drawn by a wire rope winding around a drum operated by an engine. These cars could be stopped by the brake and by signal to the engineer. At the time of the accident plaintiff was operating a car, and was standing on its front platform by the brake as it was drawn up the incline from the pit. The rope in some manner caught under the end of one of the boards which formed a walk between the rails, raising such board so that, as the car advanced, it struck and broke plaintiff's leg. Plaintiff was riding with his back to the rope, although he knew of the dangers to be anticipated therefrom and had on this very trip been cautioned to turn around and look at the rope. *Held,* that he was guilty of contributory negligence.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

This is an action to recover for personal injuries suffered by the plaintiff while in the employ of the defendant in the defendant's brickyard on the 4th day of May, 1894, the plaintiff being then a minor of the age of sixteen years and eleven months. The accident happened while the plaintiff was operating a loaded car running on a small railroad track in the defendant's brickyard, which was used to haul clay up out of the clay pit. It was drawn by a wire rope or cable winding around a drum, which was operated by a steam engine. The railroad in question had a gauge of about two feet, and ran from the engine house, where the brick-making machinery was, west along the general surface of the ground on a slight incline to the top of the clay pit, and then down a steep incline, over a trestlework, into the pit, until it arrived at the bottom, and then, curving a little

to the north, ran a distance of about 100 feet to the turn-table, from which several tracks radiated to the places where the shovelers filled the cars. There were two small cars in use upon this road. The frame of each car was about seven feet long and about three feet wide; and the box, which was arranged to dump upon one side, was about five feet square. The wheels were twelve inches in diameter, and were supplied with brake shoes operated by a brake in the front of the car. The frame of the car extended out at each end, beyond the box, several inches, and afforded a place whereon an employee might stand and operate the brake. The distance from the drum at the top of the railway to the turntable was a little over 400 feet. From the bottom of the trestle to the turntable was about eighty feet, and in this place the grade descended from the turntable to the trestle so that loaded cars ran by gravity to the bottom of the trestle. There was a board walk laid between the rails where the track ran over the trestle, for employees to walk on. About two weeks before the accident this walk had been repaired, and it was claimed by the plaintiff that the boards were loose, and that the ends overlapped each other, so as to afford an opportunity for the wire rope to get under the loose ends of the boards. On the part of the defendant the evidence tended to show that the boards were firmly nailed down in their places.

There was, as has been said, a slight curve in the track, beginning at the point where it reaches the bottom of the pit, where the grade changes from a descending to an ascending one. As the result of this slight curve, when a car began to be pulled up from the turntable by the rope, the rope would slam down on the boards, and sometimes strike a pole set on the outside of the track in the curve, which pole was placed there for the purpose of keeping the rope from going too far over the ends of the ties. The car could be stopped by the brake and by signal to the engineer who operated

the drum at the top of the railroad. The testimony tended to show that the plaintiff worked in the brickyard in the year 1892 during the entire summer, and also during 1893, and during 1893 the railroad and its appliances were the same as at the time of the accident; that he ran the car at least a day and a half or two days in the year 1893, and perhaps more. It appeared from the plaintiff's own evidence that the brake on the car was in good order, and that he knew how to operate it, and that he knew that the flapping of the cable when the car started might be dangerous. ·

On the day of the accident the plaintiff was set to work operating the car drawing clay up to the engine house. He had run the car up and down about half a dozen times before the accident. According to his own testimony, at the time when the accident happened he started from the turntable standing on the front of the car, on the right-hand side of the brake, with his hand on the brake, facing the way the car was going. When the car got on the trestlework, the rope " got playing with the boards " which formed the walk between the rails, and got in under the end of one of the boards, and lifted up the end above the platform of the car,. so that, as the car advanced upward, the end of the board struck the plaintiff's leg and seriously injured it. The plaintiff made no effort to stop the car by brake or signal, but some other employees saw the difficulty, and the car was. stopped, but a compound comminuted fracture of the leg had already taken place. On the part of the defendant several witnesses testified that the plaintiff at the time of the accident was standing with his back in the direction in. which the car was moving, so that he could not see up the track, and that he was cautioned by the foreman of the pit, when the car started, to turn around and look the way it. was going, but that he told the foreman to mind his own business.

The negligence charged in the complaint consisted in fail--

Youngbluth vs. Stephens.

are to inform the plaintiff of the dangers, and in leaving loose boards between the rails, and in not having a sufficient platform for the plaintiff to stand upon.

The jury returned the following special verdict: "(1) Was the board under which the cable caught securely nailed to the ties? *A.* Yes. (2) Did the board under which the cable caught meet the next board to the west at the center of a tie, without overlapping? *A.* Yes. (3) Was there any defect in the board walk between the rails at the place of accident? *A.* No. (4) If you answer 'Yes' to the last question, then state in what such defect consisted. (Not answered.) (5) If your answer to question three is 'Yes,' then state whether said walk was constructed, or caused to be constructed, by the defendant or his foreman, with such defect therein. (Not answered.) (6) If you answer 'Yes' to question three, then state whether the defendant knew of such defect before the accident. (Not answered.) (7) If you answer 'Yes' to question three, then state how long such defect existed before the accident. (Not answered.) (8) If you answer 'Yes' to question three, then state whether the defendant, in the exercise of reasonable care, should have discovered and remedied the defect before the accident. (Not answered.) (9) Did the defendant cause the board between the rails of his railroad, at the place of accident, to be so laid as to make it a reasonably safe place to operate the car by the cable in question? *A.* Yes. (10) Did the plaintiff ride from the turntable to the place of accident with his back to the cable and his face towards the turntable? *A.* Yes. (11) Was the plaintiff in the position mentioned in the last foregoing question when he was injured? *A.* Yes. (12) Was the plaintiff told by Mr. Hanck, at or about the time of the starting of the car, to turn round and mind the cable? *A.* Yes. (13) At what speed was the car running from the time it started until the accident? *A.* We do not know. (14) Was there a platform

on the car on which the plaintiff was riding? *A.* Yes. (15) Could the plaintiff, in the exercise of reasonable care and prudence, have escaped injury by jumping from the car in question? *A.* Yes. (16) Was the plaintiff guilty of any want of ordinary care which directly contributed to cause the injury he complains of? *A.* Yes. (17) If you find, in answer to question three, that there was a defect, then state whether such defect was the proximate cause of the plaintiff's injury or not. (Not answered.) (18) If, upon your answers to the foregoing questions, the court decides that the plaintiff is entitled to a judgment, at what sum do you assess the plaintiff's damages? *A.* $2,000."

Upon this verdict judgment for the defendant was rendered, and the plaintiff appeals.

For the appellant there was a brief by *Bushnell & Hall,* and oral argument by *A. R. Bushnell* and *F. W. Hall.*

For the respondent there was a brief by *Olin & Butler,* and oral argument by *H. L. Butler:*

WINSLOW, J. Many exceptions are preserved in the record to rulings made upon the trial, but as they do not affect the question which we deem decisive of the case, it will be unnecessary to notice them. By their answers to questions 10, 11, and 12 of the special verdict, the jury found that the plaintiff, although warned by the foreman of the pit, when the car started, to turn around and mind the cable, rode from the turntable to the place of the accident with his back to the rope, and was in this position when the board struck him. These facts are found without error. They dispose of the case, because they convict the plaintiff of contributory negligence. He was almost seventeen years of age. He had worked in the yard two previous seasons. He knew that whatever dangers there were in the operation of the car were such as were in some way connected with the rope, and he persistently refused to look at the rope, or look

Youngbluth vs. Stephens.

in the only direction from which danger might come, although expressly warned to do so.   If this be not contributory negligence, we should not know where to look for it. We have carefully examined the record, and find these answers of the jury to have been based upon entirely sufficient evidence.   Nor do we find any errors either in the rulings upon evidence or in the instructions of the court which can affect these answers.   They are, therefore, verities in the case, and are decisive against any recovery by the plaintiff.

However, even if the case were not disposed of by these findings, it would still be disposed of adversely to the plaintiff by the fact that no negligence on the part of the defendant was proven.   The negligence charged was (1) failure to warn the plaintiff of the dangers; (2) leaving loose boards. between the rails; and (3) providing no sufficient platform for the plaintiff to stand upon.   The plaintiff's own evidence shows. that the plaintiff had fully as much knowledge of any dangers which might be anticipated from the rope as any one, and further the verdict finds that he was cautioned to watch the rope upon this very trip.   The evidence fails to show that the width of the platform aided in any way in producing the injury, and the answers to the first three questions of the verdict show that there was no negligence in the securing of the boards between the rails.   We have found no erroneous. rulings which call for a new trial upon either of these points. These considerations render it unnecessary to discuss the various rulings in detail.

*By the Court.*— Judgment affirmed.